UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| KAREEN ANDERSON,<br><br>               Petitioner,<br><br>vs.<br><br>FPC YANKTON; WILLIAM ODONEL,<br>WARDEN; KORTAN, CASE MANAGER;<br>AND A. DENTON, ASSISTANT WARDEN;<br><br>             Respondents. | 4:23-CV-04136-ECS<br><br><br>ORDER TO SUPPLEMENT RECORD AND<br>FOR ADDITIONAL BRIEFING |

On February 5, 2020, the United States District Court for the District of Nevada sentenced Kareen Anderson to 121 months' imprisonment followed by five years of supervised release for conspiring to distribute a controlled substance. Docket No. 295 in 2:16-cr-00305.[1] In September 2023, while serving his sentence at the Bureau of Prison's (BOP) Federal Prison Camp in Yankton, South Dakota (FPC Yankton), Anderson petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Docs. 1, 4. His petition alleges four errors with how the BOP was carrying out, calculating, or crediting his sentence. Doc. 4. Anderson first argues a "Due Process Violation for [the BOP] exceeding [its] statutory authority [under] 18 U.S.C. [§] 3621(e) and breach of contract." Id. at 6. According to Anderson, the recommended residential reentry center (RRC)/ home confinement (HC) placement date memorialized in his April 6, 2023 Individualized Needs Plan constituted a contract between himself and the BOP that

---

[1] Documents from Anderson's District of Nevada case, United States v. Kareen Anderson, 2:16-cr-00305-KJD-VCF, are cited as "Docket No. # in 2:16-cr-00305."

the BOP breached. Id. at 7; Doc. 4-1 at 8. Second, he claims a due process violation arising from the calculation and application of good time credits under the First Step Act (FSA), commonly referred to as earned time credits (ETCs). Doc. 4 at 7. This second argument challenges the date the BOP designated him as eligible to accrue FSA good time credits, as well as the BOPs decision to not credit a paralegal certification course he completed through the Blackstone Career Institute. See id. Third, Anderson alleges a due process violation for being denied a transfer to an RRC under the Second Chance Act. Id. Lastly, he alleges FPC Yankton staff retaliated against him for seeking administrative remedies and filing this action. Id. at 8.

Anderson's petition was referred to a magistrate judge under 28 U.S.C. § 636(b)(1)(B) and District of South Dakota Civil Local Rule of Practice 72.1.A.2(b). On December 22, 2023, the magistrate judge issued a report recommending this Court dismiss Anderson's petition. Doc. 21. Anderson timely objected to the magistrate judge's Report and Recommendation. Doc. 22. This file was transferred to the undersigned on June 11, 2024. Doc. 28.

When a party files timely objections, this Court reviews the Report and Recommendation under the standards provided in 28 U.S.C. § 636(b)(1), which states, "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." The district court judge "may accept, reject, or modify, in whole or in part, the [magistrate judge's] findings or recommendations." Id.

Based on this Court's review of the record, at least part of Anderson's petition warrants further inquiry. For example, the BOP appears to have miscalculated the date Anderson became eligible to earn ETCs. Compare Doc. 20 at 5–7 with Yufenyuy v. Warden, 659 F. Supp. 3d 213, 218 (D.N.H. 2023) (concluding that 28 C.F.R. § 523.42 adds an eligibility requirement that conflicts with the plain language of the FSA). Under the FSA, an inmate "shall earn" ETCs

2

upon successfully participating in and completing evidence-based recidivism reduction programs or productive activities. An inmate becomes eligible to earn ETCs once "the prisoner's sentence commences under section 3585(a)." 18 U.S.C. § 3632(d)(4)(B). That section provides, "A sentence to a term of imprisonment commences on the date the defendant is received *in custody awaiting transportation to*, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a) (emphasis added). In contrast, the BOP's regulations implementing the FSA provide that an inmate cannot begin earning ETCs until "the date the inmate *arrives* or voluntarily surrenders *at the designated Bureau* facility where the sentence will be served." 28 C.F.R. § 523.42(a) (emphasis added).

Anderson asserts that he became eligible to earn FSA credits on June 30, 2020, the date he reported to the BOP's Federal Correctional Complex in Victorville, California. Doc. 4 at 7. The BOP, on the other hand, posits that Anderson did not "officially" enter BOP custody until March 25, 2021, nearly nine months after he first set foot in a BOP facility post-sentencing. Doc. 20 at 5–7. The BOP explains that between June 30, 2020, and March 25, 2021, Anderson was on "holdover" status, awaiting transportation to the "designated" BOP facility where he was to serve his sentence. Id. at 6. According to the BOP, an inmate on holdover status is under the custody of the United States Marshals Service (USMS) but occupies beds allocated to the USMS at BOP institutions. Id. "Because inmates on holdover status are housed in USMS beds, the [BOP] does not consider an inmate officially committed to BOP custody until they reach general population at their designated institution." Id.

Several courts faced with similar facts found the BOP's regulation imposed an "additional hurdle" that "runs afoul the unambiguous eligibility requirements of the FSA." Tantuwaya v. Birkholz, 24-cv-02891, 2024 WL 4805423, at *2–3 (C.D. Cal. Oct. 10, 2024), R.

3

& R. adopted 2024 WL 4803522 (C.D. Cal. Nov. 15, 2024); see also Jackson v. Doerer, Case

No. 24-01353, 2024 WL 4719489, at *5–9 (C.D. Cal. Nov. 7, 2024); Sharma v. Peters, --- F.

Supp. 3d ---, 2024 WL 4668135, at *6–7 (M.D. Ala. Nov. 4, 2024) (concluding that 28 C.F.R.

§ 523.42 adds an eligibility requirement that conflicts with the plain language of the FSA); Jobin

v. Warden, No. 23-cv-01700, 2024 WL 1367902, at *3–4 (E.D. Cal. Apr. 1, 2024) (finding

petitioner eligible to earn ETCs from date of sentencing since he was in BOP custody at time of

sentencing), R. & R. adopted, 2024 WL 2786898 (E.D. Cal. May 30, 2024); Patel v. Barron, No.

C23-937, 2023 WL 6311281, at *4–5 (W.D. Wash. Sept. 28, 2023) (same); Huihui v. Derr, No.

22-00541, 2023 WL 4086073, at *3–5 (D. Haw. June 20, 2023) (same); Yufenyuy, 659 F. Supp.

3d at 218 (same); Umejesi v. Warden, No. 22-cv-251, 2023 WL 4101471, at *4 (D.N.H. Mar. 16,

2023) (same); Komando v. Warden, No. 22-cv-425, 2023 WL 4101540, at *4 (D.N.H. Mar. 16,

2023) (same); see also Mohammed v. Stover, No. 23-CV-757, 2024 WL 1769307, at *2 n.2 (D.

Conn. Apr. 23, 2024) (noting its agreement with the reasoning in Huihui and Yufenyuy that BOP

regulation § 523.42(a) contradicts clear congressional intent for when an inmate becomes

eligible to earn ETCs). And this Court would tend to agree.

But before it can address the merits of Anderson's petition, this Court must first decide

whether it continues to exercise jurisdiction over his case. See Henderson ex rel. Henderson v.

Shinseki, 562 U.S. 428, 434 (2011) ("federal courts have an independent obligation to ensure

that they do not exceed the scope of their jurisdiction"). After the Report and Recommendation

was filed, but before this case was transferred to the undersigned, Anderson appears to have been

released from FPC Yankton to an RRC and later released from BOP custody altogether. See

Docket No. 348 in 2:16-cr-00305 (noting Anderson was scheduled to be released to an RRC on

May 10, 2024); see generally BOP inmate locator, https://www.bop.gov/inmateloc/, (last visited

Nov. 21, 2024) (stating Anderson was not in BOP custody as of August 15, 2024). Because this Court's authority to grant habeas relief is limited to its respective jurisdiction, see Rumsfeld v. Padilla, 542 U.S. 426, 442 (2004) (quoting 28 U.S.C. § 2241(a)), this Court must be sure that Anderson's release from BOP custody and possible transfer outside the District of South Dakota does not deprive this Court of jurisdiction. See Docket No. 348 in 2:16-cr-00305 (ordering that Anderson be placed at an RRC in Nevada).

As stated above, "District courts are limited to granting habeas relief 'within their respective jurisdictions.'" Rumsfeld, 542 U.S. at 442 (quoting 28 U.S.C. § 2241(a)). This restriction, however, "require[s] 'nothing more than that the court issuing the writ have jurisdiction over the [petitioner's] custodian.'" Id. at 442 (quoting Braden v. 30th Jud. Cir. Ct., 410 U.S. 484, 495 (1973)). The custodian, in its traditional habeas usage, means "the person with the ability to produce the prisoner's body before the habeas court." Id. at 435 (internal quotation marks omitted). Therefore, when a petitioner challenges his present physical confinement, "the proper respondent is the warden of the facility where the [petitioner] is being held." Id.

At the time Anderson filed his § 2241 petition, he was incarcerated at FPC Yankton and was challenging the nature of his present physical confinement. See Matheny v. Morrison, 307 F.3d 709, 711 (8th Cir. 2002) (a habeas action is properly filed in the jurisdiction where the inmate is incarcerated). His petition, therefore, correctly named FPC Yankton's warden as the respondent and was properly filed with this Court. See Doc. 4. Now, however, the procedural posture of his claim appears to have changed. To be sure, the main thrust of his underlying claim remains the same: the BOP unlawfully deprived him of his liberty by incorrectly calculating and crediting his ETCs. Id. at 7. But if he has been released from BOP custody and started his term

of supervised release, his custodian, and consequently the proper respondent to his petition,

would likely now be the United States Probation and Pretrial Services Office for the District of

Nevada—the district court that imposed his sentence.

Yet despite Anderson's release from BOP custody and probable transfer out of District, it

is unclear whether this Court loses jurisdiction over his petition. The United States Supreme

Court and Eighth Circuit have recognized that the district of confinement rule is "not

jurisdictional in the sense of a limitation on subject-matter jurisdiction." Rumsfeld, 542 U.S. at

451 (Kennedy, J., concurring); see also id. (collecting cases that did not comply with either the

immediate custodian or territorial jurisdiction rule and citing Braden, 410 U.S. at 495; Strait v.

Laird, 406 U.S. 341, 345 (1972); United States ex rel. Toth v. Quarles, 350 U.S. 11 (1955);

Burns v. Wilson, 346 U.S. 137 (1953); Ex parte Endo, 323 U.S. 283(1944)); Copley v. Keohane,

150 F.3d 827, 830 (8th Cir. 1998) (noting that jurisdiction may be retained after petitioner is

transferred out of district). Rather, "the proper location for a habeas petition is best understood

as a question of personal jurisdiction or venue." Rumsfeld, 542 U.S. at 451–52 (Kennedy, J.,

concurring) (noting that "'jurisdiction' is susceptible of different meanings").

The Eighth Circuit has adopted a similar view. In Copley, 150 F.3d at 830, the court

held, "if a district court has proper jurisdiction when a habeas petition is filed, . . . a subsequent

transfer of the prisoner will not defeat habeas jurisdiction, but only 'so long as an appropriate

respondent with custody remains' in the district." A district court's jurisdiction over a § 2241

petition can be reduced to two questions: First, "who is the proper respondent to that petition?

And second, does the [District Court] have jurisdiction over him or her?" Rumsfeld, 542 U.S. at

434. Also, custody, does not mean "actual, physical custody" as is the case when a petitioner is

physically incarcerated. Jones v. Cunningham, 371 U.S. 236, 239 (1963); Roberts v. Cox, 4:20-

cv-04187-KES, 2023 WL 4669416, at *2 (D.S.D. Jan. 20, 2023).  The Supreme Court has

recognized that "there are other restraints on a man's liberty, restraints not shared by the public

generally, which have been thought sufficient in the English-speaking world to support the

issuance of habeas corpus." Jones, 371 U.S. at 240; Roberts, 2023 WL 4669416, at *2.  The

conditions imposed on an individual's liberty during supervised release are an example of these

"other restraints." See Francis v. Maloney, 798 F.3d 33, 37 (1st Cir. 2015) (stating that "an

individual serving a supervised release term satisfies the 'in custody requirement'" in the § 2255

context), cited by Roberts, 2023 WL 4669416, at *2.  Accordingly, Anderson's release from

BOP custody and subsequent transfer out of District to begin supervised release would not

necessarily deprive this Court of jurisdiction, so long as someone with custody over Anderson

remains within the District of South Dakota.  Rivera-Perez v. Stover, No. 23-cv-1348, 2024 WL

4819250, at *5 (D. Conn. Nov. 18, 2024) (finding court has jurisdiction over BOP generally

when the warden of a BOP facility is sued in his official capacity and a BOP facility is "within

reach of [the court's] process").

　　　Currently, however, the record before this Court is inadequate to make such a

jurisdictional finding, and neither party has raised nor briefed the issue.[2]  Without the parties

---

[2] This Court acknowledges that Respondents raised a separate jurisdictional argument based on
the calculation of earned time credits being adjudicative decisions falling outside the Court's
subject-matter jurisdiction, see Doc. 21 at 11–13, but considering the nature of Anderson's
claim, this Court finds that argument unavailing.  Federal Courts have jurisdiction to review
agency rulemaking decisions.  See Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998).
Anderson, at least in part, is challenging the BOP's regulations implementing the FSA.  His
claim—that the BOP's regulation on eligibility conflicts with the FSA and deprived him of
ETCs—directly challenges the validity of the BOP's implementation and interpretation of the
law.  While the BOP's calculation of Anderson's ETCs may be individualized to him (one
certainly hopes it would be), it is this individual decision that gives Anderson a cognizable claim
through which he can challenge the BOP's rulemaking decisions.  If courts strictly construed
every "determination[] which appl[ied] rules to individual cases" as adjudicative decisions not

7

supplementing the record with the appropriate documents, this Court cannot make a factual determination on whether (1) Anderson has been released from BOP custody, (2) he has been transferred outside the District of South Dakota, or (3) he has begun supervised release. Without knowing where Anderson is living while on supervised release and which office is supervising him, this Court cannot resolve whether a respondent with custody over him remains within this Court's jurisdiction. Furthermore, at one point, the State of California had an active warrant out for Anderson's arrest, which he would have had to address once he began supervised release. See Doc. 20 at 7. If the State of California detained Anderson pursuant to this warrant, his custodian is likely outside this Court's jurisdiction.

Therefore, it is hereby

ORDERED that the parties supplement the record with the facts necessary for this Court to assess jurisdiction and submit additional briefs on the questions outlined below by **December 30, 2024**:

1. Whether this Court continues to have jurisdiction over Anderson's petition if he is no longer in BOP custody and is serving his term of supervised release in a district other than the District of South Dakota.

2. If this Court concludes that it continues to have jurisdiction over Anderson's petition, what is the proper remedy if the BOP miscalculated the date Anderson became eligible to begin earning ETCs?

---

subject to judicial review, see Doc. 21 at 12 (quoting Wiggins v. Wise, 951 F. Supp. 614, 618 (S.D. W. Va. 1996)), they would eviscerate a prisoner's standing to challenge the governing regulation.

3. If this Court concludes that jurisdiction no longer exists, can Anderson's § 2241 petition be transferred to the United States District Court for the District of Nevada, or any other federal district court that has jurisdiction over his current custodian?

It is further

ORDERED that the Clerk of Court's Office mail a copy of this Order to Kareen Anderson's last known address on record[3] and mail a copy to the United States Probation Office, District of Nevada, Foley Federal Building and U.S. Courthouse, 300 Las Vegas Blvd South, Suite 1200, Las Vegas, NV 89101.

DATED this 26 day of November, 2024.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE

---

[3] Early in his case, Anderson was notified of his obligation to keep this Court apprised of any future change in address. Doc. 3 ("The plaintiff must keep the Court informed if the plaintiff's address changes. If the Court is not kept informed and multiple items are returned as undelivered, the plaintiff's case may be dismissed without prejudice for failure to prosecute."). If Anderson has in fact been released from FPC Yankton, he has not yet updated his address. If his address has changed, Anderson should provide an updated address to the Clerk of Court's Office for the District of South Dakota, Southern Division, so he does not risk dismissal of his petition for failing to prosecute.